# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-10-00761-CV

HSS Systems, L.L.C. d/b/a Shared Service Center - San Antonio, Appellant

v.

Jennie Lucan, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
NO. D-1-GN-10-001941, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## MEMORANDUM OPINION

Appellant HSS Systems, L.L.C., doing business as Shared Service Center—San Antonio, appeals the trial court's order denying its motion to compel arbitration of a retaliation claim filed by its former employee, appellee Jennie Lucan. Because we hold that no enforceable arbitration agreement exists, we affirm the trial court's denial of HSS Systems' motion.

## BACKGROUND

HSS Systems provides administrative staffing and services to its client hospitals. In November 2007, HSS Systems hired Lucan as a patient registrar at St. David's South Austin Hospital. Though Lucan worked at St. David's facilities, she was an employee of HSS Systems. Approximately six months after she began working at HSS Systems, Lucan made a complaint to her supervisor that she had witnessed other employees engaging in sexual misconduct in the workplace. In March 2009, Lucan made a second complaint stating that she suffered ongoing retaliation from

co-workers in response to her initial complaint. Approximately ten days after Lucan submitted a written report of her original complaint and subsequent retaliation, HSS Systems terminated her employment. Lucan filed an administrative charge of retaliation and, after receiving authorization to file suit from the Equal Employment Opportunity Commission and the Civil Rights Division of the Texas Workforce Commission, initiated suit in district court.

HSS Systems filed both an answer and a motion to stay and compel arbitration, citing an arbitration policy that took effect in 2006 and applied to all HSS Systems employees. The nine-page policy, entitled "Mandatory Binding Arbitration Policy," stated:

> Under the Mandatory Binding Arbitration Policy, both the employee and the Texas Affiliated Employer agree to give up any right either of them might have to a jury or judge trial regarding any issue governed by the Mandatory Binding Arbitration Policy. All disputes governed by the Mandatory Binding Arbitration Policy shall be submitted to final and binding arbitration to be conducted by an experienced arbitrator from the American Arbitration Association ("AAA") chosen by the employee and the company. The employee and the Employer have equal say in selecting an arbitrator and the arbitration will be held in the same city where the Employer is located. The employee and the Employer will be bound by the decision made by the third party neutral arbitrator except as allowed by law to appeal to a court.

The arbitration policy dictates that involuntary termination claims, retaliation claims, and employment-discrimination and harassment claims are all covered by the policy and must be submitted to arbitration. The agreement is "governed exclusively by and interpreted exclusively under the Federal Arbitration Act."

At a hearing on the motion to compel arbitration, HSS Systems presented affidavits by Stephanie Long, HSS Systems' human-resources manager, and Cherie Wright, HSS Systems'

2

human-resources director.[1]  Lucan also submitted an affidavit.  No live testimony took place.  In Long's affidavit, she stated that Lucan attended a new-employee orientation in 2007 that included a presentation labeled "HR Orientation, Health & Safety Program."  A brochure entitled "Building a Healthy Work Environment" was included in all new-hire packets and displayed on an overhead projector during this presentation.[2]  The brochure outlined the company's employee initiatives, including sections on the for-cause termination policy, the "employee advisory group" program, a four-step dispute-resolution process, and binding arbitration.  The dispute-resolution section concluded by stating, "If your dispute is not resolved in the four steps of the dispute resolution process and is related to termination of employment or a claim that the hospital has violated a statutory provision that may otherwise be heard in court, you may request binding arbitration."  The brochure then discussed the company's arbitration policy as follows:

> Binding arbitration gives you the chance to appeal decisions to a neutral third party called an arbitrator.  Binding arbitration is a legal process much like a court, but is much faster and less costly.  You and the hospital will be bound by the decision made by the neutral third part[y] arbitrator except as allowed by law to appeal to a court.  This facility has an agreement with the American Arbitration Association to provide arbitration services.

> For more details about the employment dispute resolution process or binding arbitration, see your supervisor.  If a problem or concern involves your supervisor, go directly to your department head or human resources department.

> *These policies and practices help us recognize the value of each and every employee.*
> *They expand your opportunities to share ideas, solve problems and help build a*
> *healthy work environment . . . a great place to work . . . and the best possible place*

---

[1]  A copy of the Mandatory Binding Arbitration Policy was attached to Wright's affidavit.

[2]  A copy of the "Building a Healthy Work Environment" brochure was attached to Long's affidavit.

*to receive care.*

*For more information see your supervisor or human resources department.*

Long averred that during the presentation she also "alerted the employees that mandatory arbitration was the final step in the dispute resolution process. Specifically [she] described the Arbitration Policy and instructed that arbitration was required in lieu of going to court, should a dispute ever arise." She also told employees that "by coming to work for HSS, the employees were accepting all of the policies discussed, including arbitration." Long further stated in her affidavit that the Mandatory Binding Arbitration Policy document was available on the employee intranet and that the "Building a Healthy Work Environment" brochure was posted in employee break rooms.

Lucan asserted in her affidavit that she never received a copy of the Mandatory Binding Arbitration Policy, but admitted that she attended a new-employee orientation. She claimed that the orientation meetings "may have included a quick explanation of the employee handbook, but they did not involve any significant discussion of arbitration" and stated, "I was not told during those meetings that working for the company meant I agreed to any arbitration policy."

After considering the evidence, the trial court denied HSS Systems' motion to stay and compel arbitration. HSS Systems filed this interlocutory appeal challenging the trial court's denial of its motion.

**STANDARD OF REVIEW**

Section 51.016 of the civil practice and remedies code permits courts to review orders denying a motion to compel arbitration subject to the Federal Arbitration Act by interlocutory appeal.

4

*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (West Supp. 2010). We have recently held that the standard used to review an interlocutory appeal under section 51.016 is the same as that used for appeals brought pursuant to the Texas Arbitration Act. *See SEB, Inc. v. Campbell*, No. 03-10-00375-CV, 2011 Tex. App. LEXIS 1588, at *7 (Tex. App.—Austin Mar. 2, 2011, no pet. h.) (mem. op.). Under the Texas Arbitration Act, we apply a no-evidence standard to the trial court's factual determinations and a de novo standard to its legal determinations. *See Trammell v. Galaxy Ranch Sch., L.P.*, 246 S.W.3d 815, 820 (Tex. App.—Dallas 2008, no pet.). We will therefore defer to the trial court's factual determinations if supported by the evidence, review its legal determinations de novo, and reverse the trial court's order only if we conclude that the trial court abused its discretion by denying the motion to compel arbitration. *See id.*; *see also Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 862-63 (Tex. App.—Dallas 2010, no pet.) (applying abuse-of-discretion standard in reviewing interlocutory appeal under section 51.016).

Whether there is a valid and enforceable agreement to arbitrate is a legal question subject to de novo review. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). A strong presumption favoring arbitration arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *Id.* Under the Federal Arbitration Act, we apply ordinary state contract-law principles to decide whether a valid arbitration agreement exists. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006). Once a valid agreement to arbitrate has been established, a presumption attaches favoring arbitration and the burden shifts to the party resisting arbitration to establish a defense to enforcing arbitration. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (per curiam).

5

**DISCUSSION**

HSS Systems contends that the trial court erred in denying its motion to compel arbitration because (1) Lucan received sufficient notice of the arbitration policy and therefore her continued employment constituted acceptance of the policy as a matter of law and (2) Lucan did not prove any defense to arbitration. HSS Systems also argues that to the extent fact questions exist, the trial court erred in deciding them without an evidentiary hearing.

A party seeking to compel arbitration must first establish the existence of a valid arbitration agreement. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001). Once the movant establishes an agreement, the court must determine whether the arbitration agreement covers the nonmovant's claims. *Id.* To establish that a valid agreement to arbitrate exists, the employer must prove that the employee (1) received notice of the employer's arbitration policy and (2) accepted it. *In re Dallas Peterbilt, Ltd.*, 196 S.W.3d 161, 162 (Tex. 2006) (per curiam). An employee has notice if she has knowledge of the terms of the policy. *In re Halliburton*, 80 S.W.3d 566, 568 (Tex. 2002) (citing *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 299 (Tex. 1986)). When determining whether an employee received notice of an arbitration agreement, we are to consider all communications between the employer and employee. *Peterbilt*, 196 S.W.3d at 162. If an employer proves that it has unequivocally notified the employee of the arbitration policy's terms, the employee's continuing employment will constitute acceptance of the terms as a matter of law. *Halliburton*, 80 S.W.3d at 568 (citing *Hathaway*, 711 S.W.2d at 299).

Therefore, if Lucan received notice of the Mandatory Binding Arbitration Policy, her continued employment may be considered acceptance of the policy. Because her claim for retaliation

6

is explicitly covered under the arbitration policy, the burden would then shift to Lucan to present a defense to enforcing arbitration. *See AdvancePCS Health*, 172 S.W.3d at 607.

Lucan attested that she never saw a copy of the Mandatory Binding Arbitration Policy, nor did she sign anything acknowledging receipt of the policy. HSS Systems offered no evidence disputing this. Long, however, did declare, and Lucan did not deny, that Lucan was present at Long's orientation presentation and was given a copy of the "Building a Healthy Work Environment" brochure. Long further claimed to have stated at the orientation that "arbitration was required in lieu of going to court," while Lucan stated that the orientation "did not involve any significant discussion of arbitration."

HSS Systems argues that Lucan's statement denying "significant discussion" of arbitration does not directly contradict Long's claim that she mentioned the mandatory nature of the policy. It further claims that Long's uncontroverted representation that she explained that "arbitration was required in lieu of going to court" is unequivocal evidence that Lucan had notice of the mandatory nature of the arbitration policy as a matter of law. However, even assuming Long did make these oral statements, a fact question still exists as to whether Lucan received adequate notice.

The factors relevant to whether Lucan received notice were: (1) the "Building a Healthy Work Environment" brochure given to Lucan; (2) any oral statements made by Long in the orientation; and (3) the availability of the arbitration policy on the company intranet. HSS Systems does not cite to, nor could we find, any authority suggesting that the mere presence of a policy on the company intranet, without any further notification to the employee, amounted to notice of the

policy. Therefore, we shall examine whether the oral statements and summary brochure adequately notified Lucan of the terms of the policy.

A summary of an arbitration policy may convey adequate notice of the policy to an employee when the policy's material elements are included in the summary. *See In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780-81 (Tex. 2006) (holding that employee who attended meeting describing mandatory arbitration policy and received written policy summary had notice of policy and accepted it by continued employment); *Halliburton*, 80 S.W.3d at 569 (holding that policy summary stating that employees were "waiving all rights . . . with regard to trial by jury for employment related matters" by continuing employment gave employee unequivocal notice of mandatory arbitration policy).

The language in the "Building a Healthy Work Environment" brochure, however, does not clearly communicate the mandatory nature of the arbitration policy, nor does it warn employees that their right to file suit in state or federal court is restricted. Moreover, the tone of the brochure implies that arbitration is an additional dispute-resolution technique rather than the sole remedy available to employees. The brochure identifies itself as an "overview of the improvements" to employee policies, describes the dispute-resolution process in voluntary terms, and states that a new "opportunity" to engage in a formal process is "now available." The brochure further reads that if the dispute is not resolved, "you may request binding arbitration." The section on binding arbitration describes it as a "chance to appeal decisions to a neutral third party" and promotes arbitration as a "faster" and "less costly" alternative to court. This language suggests that arbitration is yet another option for dispute resolution rather than a mandatory policy. As the trial court stated

8

in a letter to the parties explaining the basis for its denial of the motion to compel, "Though the notice clearly indicates that arbitration, if used, is binding, nothing in it indicates that arbitration is mandatory. To the contrary, everything leads the reader to believe it is an additional option, not the exclusive means of dispute resolution."[3]

When considered together, the "Building a Healthy Work Environment" brochure, indicating that arbitration is a solution that employees "may request," and Long's oral statements that arbitration is "required in lieu of going to court" provided contradictory messages to Lucan regarding the terms of the policy. When, as here, written notice and oral communications provide conflicting signals to the employee as to an employment policy, unequivocal notice is not proven as a matter of law. Instead, notice becomes a question of fact. *See Hathaway*, 711 S.W.2d at 229 (holding that unequivocal notice was question for jury when employee received written notice of policy modification but was told by superior "not to worry" about it and that he would "take care of it"). The trial court resolved the fact issue in favor of Lucan and dismissed the motion to compel arbitration. In reviewing this factual determination, we must credit the favorable evidence if a reasonable fact-finder could and disregard the contrary evidence unless a reasonable fact-finder could not. *See Trammell*, 246 S.W.3d at 820. After doing so, we cannot conclude that the trial court

---

[3] We note that a trial court's letter to the parties "is not competent evidence of the trial court's basis for judgment," and the statements contained therein do not constitute fact findings. *Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex. 1990); *Mondragon v. Austin*, 954 S.W.2d 191, 193 (Tex. App.—Austin 1997, pet. denied) (noting that pre-judgment letter "cannot constitute findings of fact and conclusions of law"); *see also Gulf States Utils. Cos. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002) (stating that appellate court should review judgment "that can be rendered from the pleadings, evidence, and verdict," not based on letter from trial court).

abused its discretion in determining that the written and oral communications notifying Lucan of the arbitration policy were equivocal. Because no proof of unequivocal notice exists, Lucan's continued employment did not amount to acceptance as a matter of law. *See Hathaway*, 711 S.W.2d at 229. Therefore, HSS Systems failed to meet its burden to prove that an enforceable arbitration agreement existed. *See Peterbilt*, 196 S.W.3d at 162. We overrule HSS Systems' first point of error.

In its second point of error, HSS Systems contends that Lucan did not prove any defenses to arbitration and therefore arbitration should be compelled. Because we conclude that no enforceable arbitration agreement existed, Lucan does not bear the burden of proving a defense to the agreement. *See AdvancePCS Health*, 172 S.W.3d at 607 (declaring that party opposing arbitration does not bear burden of establishing defense to enforcement until after valid agreement to arbitrate is established). This point of error is overruled.

In its third and final point of error, HSS Systems argues that in the event that we hold that a material fact issue does exist, the case should be remanded to the trial court for an evidentiary hearing. The record indicates that the trial court held a hearing on the motion to compel arbitration on October 19, 2010. At the hearing, each party chose to submit only the affidavits mentioned above. In response to a question from the trial court, HSS Systems confirmed that it had no live testimony to offer. Though HSS Systems believed that its documentary evidence satisfied the burden of persuasion, the trial court disagreed. Having failed to meet its burden in the initial hearing, HSS Systems is not entitled to a second chance to do so. *See, e.g.*, *Kerr-McGee Corp. v. Helton*, 133 S.W.3d 245, 260 (Tex. 2003) (remanding to allow party to supplement evidence without sufficient justification would allow him "an opportunity for another 'bite at the apple'" (citing

10

*Jackson v. Ewton*, 411 S.W.2d 715, 719 (Tex. 1967)) and is improper).  We overrule HSS Systems'

third point of error.

**CONCLUSION**

We affirm the trial court's order denying the motion to stay and compel arbitration.


_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed:   June 9, 2011