

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

06-20-00047-CV

_____

IN RE LANDSTAR RANGER, INC.

Original Mandamus Proceeding

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

This is an original proceeding brought by Landstar Ranger, Inc. (Relator), seeking issuance of a writ of mandamus requiring Respondent, the 276th Judicial District Court of Titus County (the Trial Court), to vacate its July 14, 2020, order overruling Relator's motion for protective order regarding the proposed depositions of Relator's out-of-state corporate representatives and to enter an order requiring the depositions to be conducted remotely or at a later date due to the "excessive risk of exposure to COVID-19."

## I.     Background

This is a discovery mandamus proceeding pertaining to a personal injury case in the context of a fatal motor vehicle accident. Plaintiffs/Real Parties in Interest (RPI) filed their first amended original petition January 29, 2018, and the parties began the process of conducting discovery. RPI's counsel sought to depose Relator's corporate representatives in Dallas, Texas. Relator agreed to present Shelly Seaton, the vice president of loss prevention, and Kyle Abbott, the vice president of heavy haul for Relator. Seaton worked in Relator's Winnebago County, Illinois, office, and Abbott resided in St. Johns County, Florida, which is near Jacksonville. Due to the COVID-19 pandemic, however, Relator asked RPI if they would agree to take Relator's corporate representatives' depositions remotely. RPI would not agree to the proposed arrangement.

On June 9, 2020, Relator filed a motion for a protective order asking, among other things,[1] that the Trial Court order RPI to conduct the corporate representatives' depositions via videoconference. In the alternative, Relator asked the Trial Court to suspend the depositions until governmental and corporate restrictions had been lifted. In support of Relator's contention that its corporate representatives should not be required to appear for depositions in person due to COVID-19, Relator pointed out that the World Health Organization (WHO) had declared the COVID-19 outbreak a global pandemic.

The Trial Court held a hearing on various issues, including Relator's motion for protective order, and on June 12, 2020, it orally denied Relator's requested relief, stating, "Now, with regard to the business about you can't make them travel, I'm not going to grant that relief. The corporate representative[s] of Landstar [are] going to have to travel."

Subsequently, at a July 14, 2020, hearing, Relator's counsel sought clarification of the Trial Court's June 12 order, stating,

> At the prior hearing, Your Honor, we brought to you a motion for protective order. At that hearing[,] you ordered for Landstar's court representative to be deposed in Texas for us to work with counsel to find dates, which we did. We worked with counsel. Those notices have been sent for August 17th and 18th at our offices in Dallas.

Relator then informed the Trial Court that both of the designated corporate representatives were still concerned about traveling to Texas from their home states and asked again if the depositions

---

[1]Relator also asked the Trial Court to mandate that all counsel abide by protective measures during any in-person deposition, to "prohibit Plaintiff's counsel from engaging in unprofessional[] deposition conduct in violation of the Rules."

3

could be taken remotely. The Trial Court denied the request and ordered that the depositions go forward on August 17 and 18 in Dallas.

Relator also sought clarification as to what health protocols the Trial Court expected the parties to follow during live depositions. The Trial Court responded, "With regard to wearing of masks, yes. Now, of course, you understand I've got my court reporter here, and the court reporter has to be able to understand what the witness's responses are." The court continued, "You've got that situation, but, yes, you should be wearing masks and should be maintaining the appropriate distance."[2]

On July 23, 2020, Relator filed a motion for reconsideration, asking the Trial Court to reconsider the denial of its motion for protective order. In support of its motion, Relator attached Seaton's affidavit, which stated,

2.      I currently reside in Winnebago, Illinois. In order to travel to Dallas, Texas[,] to attend a deposition on August 18, 2020, I will have to fly out of either Chicago O'Hare International Airport or Chicago Midway International Airport. On July 15, 2020, the Winnebago County Health Department issued an Order requiring anyone returning from Texas to quarantine for a period of 14 days. I currently care for my mother and routinely transport her to appointments with her medical doctor. I also visit and provide care to my mother-in-law at her nursing facility. However, I will be unable to care for my mother and mother-in-law if I am required to quarantine for 14 days after returning from Dallas, Texas.

3.      As stated above, I am an employee of [Relator] and [Relator] has implemented a corporate travel ban through August 31, 2020.

---

[2]During that hearing, the Trial Court required everyone to wear masks unless they were speaking so that the court reporter could understand what was being said. The Trial Court explained, "When you start speaking, be sure to take it off. And then put them back on if you want to because . . . we found that when you try to talk through one of the masks, it just doesn't come through good enough."

4

4.    I am concerned for my safety while traveling during the Covid-19 pandemic. Based on the information above, I respectfully request the court to allow me to take my depositions remotely.

Relator also attached Abbott's affidavit, which contained similar concerns as those presented in Seaton's affidavit. Abbott said that he was currently living in St. Johns County, Florida, and in order to travel to Dallas, he would have to fly out of Jacksonville International Airport. He stated that the Florida Department of Health had discouraged non-essential travel and that Relator had implemented a corporate travel ban. Lastly, Abbott said, "Due to high incidents of positive Covod-19 [sic] tests in Florida and Texas, [Relator] is concerned for my safety and the safety of my fellow employees while traveling." There is nothing in Abbott's affidavit indicating that he is concerned for his safety.

On August 4, 2020, the Trial Court entered its order, stating Abbott's deposition would take place in-person on August 17, 2020, in Dallas, and that Seaton's deposition would "occur via ZOOM or in-person in the state of Illinois at the preference of Plaintiffs." The Trial Court stated that it based its separate rulings on the fact that Seaton took care of her mother's and mother-in-law's health care needs, but that there was no evidence that Abbott had any similar obligation.

## II.    Discussion

### A.    Standard of Review

Relator seeks a writ of mandamus asking this Court to vacate the Trial Court's order denying its motion for a protective order and requiring its corporate representative, Abbott, to travel to Dallas to attend an in-person deposition on August 17, 2020. Relator also seeks a writ

5

of mandamus as to Seaton's deposition. Although the Trial Court ordered Seaton's deposition to occur in Illinois at a later date, it gave RPI the choice of whether to proceed with a live deposition or via Zoom. In seeking mandamus relief, Relator contends that "it remains an abuse of discretion to require her to be deposed live at all, for the reasons in the petition."

Mandamus issues only when the mandamus record establishes (1) a clear abuse of discretion or the violation of a duty imposed by law and (2) the absence of a clear and adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding); *see In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion when it "clearly fails to correctly analyze or apply the law." *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding); *Walker*, 827 S.W.2d at 839.

Courts are to determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). Because this balance depends heavily on circumstances, the Court must be guided by analysis of principles rather than simple rules that treat cases as categories. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). In evaluating benefits and detriments, an appellate court must consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding).

Regarding the resolution of factual issues committed to the discretion of the trial court, the reviewing court may not substitute its judgment for that of the trial court. *Flores v. Fourth*

6

*Court of Appeals*, 777 S.W.2d 38, 41–42 (Tex. 1989) (orig. proceeding); *In re Martinez*, 592 S.W.3d 170, 175 (Tex. App.—Tyler 2019, orig. proceeding) (citing *Walker*, 827 S.W.2d 833). "The relator must establish that the trial court could reasonably have reached only one decision." *Walker*, 827 S.W.2d at 840. "Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary or unreasonable." *Id*. "In a mandamus proceeding, we review a trial court's legal conclusions with limited deference because the trial court has 'no discretion in determining what the law is or applying the law to the facts.'" *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 781 (Tex. 2006) (orig. proceeding) (quoting *Walker*, 827 S.W.2d at 840); *In re Frank Kent Motor Co.*, 361 S.W.3d 628, 630–31 (Tex. 2012) (orig. proceeding).

### B.      Applicable Law

The scope of discovery is generally within the trial court's discretion. *In re Dillard Dep't Stores, Inc.*, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding) (per curiam). Mandamus will issue, though, to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (per curiam). In regard to discovery issues, the remedy by appeal is inadequate when (1) the reviewing court would be unable to cure the trial court's discovery order, (2) the party's ability to present a viable claim or defense at trial is severely compromised by the trial court's error, and (3) the trial court refuses to allow discovery and the missing discovery cannot be made a part of the record on appeal, or the trial court, after a proper request,

7

refuses to make it part of the record and the reviewing court cannot evaluate the effect of the trial court's error. *Walker*, 827 S.W.2d at 843–44.

Because, the Trial Court's alleged erroneous order is a type that this Court would be unable to cure, thereby precluding an adequate remedy by appeal, we find that a petition for writ of mandamus is the appropriate vehicle in which to address Relator's claims. Thus, the issue is whether the Trial Court erred when it denied Relator's request that Abbott be deposed on August 17 in Florida via videoconference and that Seaton be deposed in Illinois via videoconference.

As a result of the onset of the COVID-19 pandemic, on March 13, 2020, Texas Governor Greg Abbott issued a disaster proclamation certifying that COVID-19 posed an imminent threat of disaster for all counties in the state of Texas.[3] After issuing several other emergency orders, on June 23, 2020, Governor Abbott issued Executive Order GA-26, announcing, among other things, the minimum standard health protocols that had been recommended by the Texas Department of State Health Services (DSHS).[4] Pursuant to DSHS's recommendation, Governor Abbott instituted health protocols, such as minimizing in-person contact, maintaining six feet between individuals, and suggesting that people wear masks when in the presence of other individuals.[5]

Likewise, the Texas Supreme Court issued several emergency orders that regulate court proceedings, including depositions. On March 13, 2020, the Texas Supreme Court issued its

---

[3]*See* The Governor of the State of Tex., Proclamation No. 41-3720, 45 Tex. Reg. 2087, 2094 (2020); *see also* https://gov.texas.gov/uploads/files/press/DISASTER_covid 19_disaster_proclamation_IMAGE_03-13-2020.pdf.

[4]https://gov.texas.gov/uploads/files/press/EO-GA-26_expanded_opening_COVID-19.pdf.

[5]https://www.dshs.texas.gov/coronavirus/opentexas.aspx#protocols.

First Joint Emergency Order allowing all courts in the state in any civil or criminal case[6] to "[m]odify or suspend any and all . . . procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than 30 days after the Governor's state of disaster has been lifted" if doing so "avoid[ed] risk to . . . parties, attorneys, . . . and the public . . . without a participant's consent[.]" *See* Supreme Court of Texas, First Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket No. 20-9042 (Tex. Mar. 13, 2020) at § 2(a).

On June 29, 2020, the Texas Supreme Court issued its Eighteenth Emergency Order, which stated that Texas courts

> may in any case, civil or criminal—and must to avoid risk to staff, parties, attorneys, jurors, and the public—without a participant's consent . . . allow or require anyone involved in any hearing, deposition, or other proceeding of any kind—including but not limited to a party, attorney, witness, court reporter, grand juror, or petit juror—to participate remotely by teleconferencing and videoconferencing.[7]

*See* Supreme Court of Texas, Eighteenth Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket No. 20-9080 (Tex. June 29, 2020) at § 3(c) (emphasis added).[8]

Keeping in mind that the trial court generally has discretion regarding the scope of discovery, we conclude that the Trial Court acted within in its discretion in denying the requested protective order seeking remote depositions for Seaton and Abbott. With the inclusion of words such as "may" and "allow," the Supreme Court's Eighteenth Emergency Order also gave the trial

---

[6]The Texas Court of Criminal Appeals joined in the order.

[7]https://www.txcourts.gov/media/1449564/209095.pdf (emphasis added).

[8]While the Eighteenth order is no longer in effect, its provisions have been extended by other orders. For instance, the Supreme Court's Twenty-Second Emergency Order renewed its Eighteenth Emergency Order by extending state courts' powers related to safety under the Eighteenth order through September 30. As relevant to the issues before us, both orders are the same or similar.

court discretion to determine whether a party involved in a deposition could participate remotely by teleconferencing and videoconferencing. In this case, Abbott failed to present the Trial Court with any evidence of what specific risk he would be exposed to—beyond risks inherent to any member of the public at large—were he required to travel for, and participate in, an in-person deposition. Conversely, Seaton presented evidence of specific risks in light of her situation, explaining the risk to her or her elderly family members in the event she was required to travel and submit to an in-person deposition. The Trial Court found that Seaton's reasons were sufficient to warrant a teleconference or videoconference deposition. Yet, it gave the RPI the choice of whether to proceed via videoconference or to travel to Illinois to take Seaton's deposition live. The RPI chose the latter. We find that the Trial Court was within its discretion to decide where, and in what manner, the depositions would be taken.

Nevertheless, we also find that the Trial Court failed "to correctly analyze or apply the law" regarding in-person depositions under the Supreme Court's Emergency Order; specifically, we find that the Trial Court failed to define sufficient safety procedures necessary for the parties to conduct the in-person depositions for both Seaton and Abbott. In reaching this conclusion, we look to the procedures mandated by the Supreme Court's Emergency Order and suggested by the Office of Government Administration's publication, *Guidance for All Court Proceedings During COVID-19 Pandemic* ("Guidance"). Other than mentioning that the individuals present at the live depositions should wear masks when they were not speaking, the Trial Court failed to adopt safety procedures for those depositions, such as social distancing, maximum group size, and

10

other restrictions and precautions necessary to comply with the Supreme Court's emergency orders.

In its Eighteenth Emergency Order, the Texas Supreme Court determined that courts must "take any other reasonable action to avoid exposing court proceedings to the threat of COVID-19." *Id*. at § 3(g). The order continued,

> Courts must not conduct in-person proceedings contrary to the *Guidance for All Court Proceedings During COVID-19 Pandemic* ("Guidance") issued by the Office of Court Administration which may be updated from time to time, regarding social distancing, maximum group size, and other restrictions and precautions. Prior to holding any in-person proceedings, a court must submit an operating plan that is consistent with the requirements set forth in the Guidance.[9] Courts must continue to use reasonable efforts to conduct proceedings remotely.

*See id.* at § 4.

Moreover, on May 28, 2020, Titus County issued a COVID-19 operating plan for the Titus County Judiciary. *See* http://www.co.titus.tx.us/district_clerk/Titus_County_Covid_ Plan.pdf. In general, the plan stated that "[a]ll judges will comply with the Emergency Orders issued by the Supreme Court of Texas, including guidance issued by the Office of Administration regarding social distancing, maximum group size, and other restrictions and precautions. The plan was signed by the Local Administrative District Judge. *See* http://www. co.titus.tx.us/district_clerk/Titus_County_Covid_Plan.pdf. The Titus County plan specifically requires, "All persons not from the same household . . . will be required to maintain adequate social distancing of at least 6 feet." *Id*. Further, "[a]ll individuals . . . will be required to wear

---

[9]*See* https://www.txcourts.gov/media/1447076/guidance-for-all-court-proceedings-during-covid-19-pandemic.pdf.

face coverings at all times," and "those with a temperature of 99.9% or above will be refused admittance," among other things.

Admittedly, the county's plan, which follows the guidance given by the Office of Court Administration, was written to apply to those entering the buildings containing the district, county, and justice courts of Titus County. However, the purpose and the spirit of the county's plan was intended to keep individuals safe during this global pandemic. Because the Trial Court required Abbott and Seaton to appear personally for their depositions, it was required to include in its order appropriate safety precautions for the participants in the depositions as it would for participants appearing live in court. Although the trial court required that the individuals present at the live depositions should wear masks when they were not speaking, we do not find that these limited procedures are sufficient to comply with the requirements of the Supreme Court's Emergency Orders.

Finally, in the same manner that the OCA monitors trial courts holding jury trials, the Trial Court should adopt reasonable procedures to ensure that the parties comply with the safety measures it orders. Because the Trial court must tailor such procedures to fit the particular case before it, we do not specify what those procedures must be. Nevertheless, those procedures must—at a minimum—be sufficient to permit the Trial Court to take appropriate action to remedy deviations from required safety procedures for all participants while the depositions are ongoing, if necessary. Because the Trial Court's order failed to account for these protections, the Trial Court failed to act within its discretion in ordering Seaton and Abbott to personally appear for their respective depositions.

12

Accordingly, we conditionally grant Relator's petition for writ of mandamus. A writ will issue only in the event the Trial Court fails to vacate its order denying Relator's motion for a protective order.


                                        Ralph K. Burgess
                                        Justice

Date Submitted:     September 14, 2020
Date Decided:       September 15, 2020

13